1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

9
10
11
12

JEROME FOSSELMAN,
CDCR #H-66012,

                                    Plaintiff,

vs.

JAMES TILTON, Secretary of the CDCR;
VICTOR ALMAGER, Warden;
CANDIE COOK, Medical Appeals
Coordinator; DR. CUMMINGS,

                                    Defendants.

Civil No.    07-1676 IEG (WMc)

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS [Doc. No. 16]
PLAINTIFF'S COMPLAINT
PURSUANT TO FED.R.CIV.P. 12(b)(6)**

13
14
15
16
17
18
19
20

**I.      PROCEDURAL BACKGROUND**

Jerome Fosselman ("Plaintiff"), a prisoner currently incarcerated at Centinela State Prison

("CEN") in Imperial, California, is proceeding pro se and *in forma pauperis* in this matter with

a Complaint, filed on August 23, 2007, pursuant to 42 U.S.C. § 1983.  Defendants Tilton,

Almager, Cook and Cummings have filed a Motion to Dismiss Plaintiff's Complaint for failing

to state a claim pursuant to FED.R.CIV.P. 12(b)(6) [Doc. No. 16-1].  Plaintiff filed his Opposition

to Defendants' Motion on June 3, 2008, to which Defendants filed their Reply on June 13, 2008.

The matter was set for hearing without oral argument and submitted on the papers for disposition

pursuant to Local Rule 7.1.d.2.

## II.   FACTUAL ALLEGATIONS

Plaintiff was initially housed at North Kern State Prison ("NKSP") on November 29, 2005 where he was given a dental examination.  (*See* Compl. at 3.)  During this examination, Plaintiff asked the NKSP dentist to repair a cap and replace some fillings in his teeth.  (*Id.*). Because he was to be transferred, Plaintiff was told to wait until he was received at his new institution to have these dental repairs made.  (*Id.*)

On January 26, 2006, Plaintiff was transferred to CEN.  (*Id.*)   Plaintiff was given a medical examination on February 28, 2006 at which time he asked the nurse when he would be seen by the dentist and she responded by laughing.  (*Id.*)  Upon Plaintiff's review of the prison's regulations, he believed that he should have been provided with a dental examination within fourteen (14) days upon arrival at CEN.[1]  (*Id.*)

After waiting several weeks, Plaintiff filed an administrative grievance on May 5, 2006, nearly three months after arriving at CEN.  In this administrative grievance, Plaintiff requested to be examined by a dentist and provided treatment for the issues he raised in his examination at NKSP.  (*Id.* at 3-4.)  Defendant Cook responded to Plaintiff's administrative grievance with a denial and informed Plaintiff that he was not seen by a dentist upon arrival at CEN because Plaintiff "did not present any dental concerns during [Plaintiff's] arrival health screening" on January 26, 2006.  (*Id.* at 4.)  Plaintiff was told by Defendant Cook that if he wanted dental services Plaintiff needed to "complete and submit a CDC 7362 Health Care Services Request," after which Plaintiff would be "ducated" in the chronological order the request was received. (*Id.*)

Plaintiff filed an appeal to Cook's response in which he stated that Title 15 required that all incoming inmates be examined by a dentist within fourteen days "following transfer from a reception center" per CAL. CODES REGS., Title 15 § 3355.1(b).  As a result of the filing of the

---

[1]   CAL. CODES REGS., Title 15 § 3355.1(b) formerly provided, in part, "[e]ach newly committed inmate shall within 14 days following transfer from a reception center to a program facility receive a complete examination by a dentist show shall develop an individual treatment plan for the inmate." However, this code section was later amended in 2007 to allow for a time period of ninety (90) days rather than fourteen (14) days for an inmate to be seen by a dentist. *See* CAL. CODES REGS., Title 15 § 3355.1(b) (amended April 18, 2007).  The time period in Plaintiff's Complaint falls under the former version of this regulation.

administrative grievance appeal, Plaintiff was examined by Dr. Cummings on July 13, 2006. (*Id.* at 5.)  Plaintiff informed Dr. Cummings that he had a toothache in "tooth #19." (*Id.*)  Dr. Cummings noted in Plaintiff's "Dental Progress Notes" that "#19 HX of SCC, SCC became defective and was repaired with a large resin which is now defective, needs new SCC." (*Id.*) Plaintiff claims Dr. Cummings assured him that he would receive a new cap for the tooth on the next visit by Dr. Cummings to "Facility D." (*Id.* at 5-6.)

Plaintiff later receive a response to his First Level administrative grievance appeal which stated, in part, "Dr. Cummings conducted a dental triage visit on you on 7-13-06 and found that your plate needs some repair." (*Id.* at 6.)  However, the response to Plaintiff's grievance further stated that Dr. Cummings indicated that Plaintiff's dental condition was a "non-emergent" issue and accordingly, he would need to follow the procedure for routine dental care.  Plaintiff was also admonished for using the grievance procedure to "circumvent the normal process to access health care services through the appeal process" in the appeal response signed by Defendant Cook and S. Walia, M.D.[2] (*Id.*)

Plaintiff submitted an appeal of this response to Defendant Almager who was the Institutional Appeals Coordinator at CEN.  (*Id.* at 7.)  Plaintiff indicated in this appeal to Defendant Almager that Dr. Cummings had already determined that he was in need of dental care and he should not have to continue submitting additional documentation to receive the dental work.  (*Id.*)  In addition, it took nearly seven months for Plaintiff to receive a dental examination when according to the CDCR's own regulations it should have occurred within fourteen days.  (*Id.*)  Defendant Cook refused to prioritize the replacement of Plaintiff's defective cap.

Plaintiff filed an appeal to the Chief of Inmate Appeals on September 4, 2006.  (*Id.*) Plaintiff explained in this administrative grievance appeal that the cap on his tooth was broken causing pain every time he ate food and he feared losing his tooth. (*Id.* at 8-9.)  This appeal was denied by the Director's Level on November 21, 2006. (*Id.* at 9.)  In this response it was stated, in part,  that "CEN dental staff have provided [Plaintiff] with appropriate dental intervention as

---

[2]  Walia is not a named Defendant in this action.

1  defined by CCR 3354." (*Id.*)  On December 1, 2006, Plaintiff received a ducat to come to the
2  Facility D clinic where he was examined by Dr. Arturo Cervantes.[3] (*Id.* at 10.)  Dr. Cervantes,
3  a dentist, "removed the defective cap, filed the tooth down some and placed a new cap on the
4  tooth" but Plaintiff maintains that the repaired cap was still "sensitive to hot and cold food and
5  water." (*Id.*)

6        Three weeks later, Plaintiff returned to the Facility D Clinic and informed the Medical
7  Technical Assistant ("MTA") that he needed to see the dentist because his toothache was getting
8  worse. (*Id.* at 10.)  Plaintiff was initially seen by the Dental Assistant but informed that he could
9  not be treated on that day because he had to "report back to his housing unit to be counted."
10  (*Id.*)  However, the dental assistant informed Plaintiff that she would leave pain pills for him at
11  the "MTA window" after dinner to deal with his toothache but Dr. Cervantes could not return
12  to the Facility D clinic until January 2007. (*Id.*)  Plaintiff returned to the clinic to pick up the
13  pain medication but it was not there. (*Id.* at 11.)  Plaintiff received another ducat to see Dr.
14  Cervantes on January 8, 2007, at which time Dr. Cervantes told Plaintiff his tooth could not be
15  saved and as a result, it had to be pulled. (*Id.*)  Plaintiff told Dr. Cervantes to pull the tooth.
16  (*Id.*)

17  **III.   DEFENDANTS' MOTION TO DISMISS PER FED.R.CIV.P. 12(b)(6)**

18        **A.   Standard of Review**

19        A motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6) tests
20  the legal sufficiency of the claims in the complaint.  The court must accept as true all material
21  allegations in the complaint, as well as reasonable inferences to be drawn from them, and must
22  construe the complaint in the light most favorable to the plaintiff.  *N.L. Industries, Inc. v.*
23  *Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986); *Parks School of Business, Inc. v. Symington*, 51 F.3d
24  1480, 1484 (9th Cir. 1995).

25        The court looks not at whether the plaintiff will "ultimately prevail but whether the
26  claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232,
27  236 (1974).

28

---

[3] Dr. Cervantes is not a named Defendant in this action.

Where a plaintiff appears pro se, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). The rule of liberal construction is "particularly important in civil rights cases." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) ("Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel."). In giving liberal interpretation to a pro se civil rights complaint, however, a court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*; *see also Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (conclusory allegations unsupported by facts are insufficient to state a claim under section 1983). "The plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the plaintiff's claim." *Jones*, 733 F.2d at 649 (internal quotation omitted).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside the pleadings. *Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Id.* at 1197 n.1. However, the court may consider documents or exhibits "whose contents are alleged in a complaint and whose authenticity no party questions." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1990); *Stone v. Writer's Guild of Am. W. Inc.*, 101 F.3d 1312, 1313-14 (9th Cir. 1996).

**B.     Eighth Amendment Inadequate Medical Treatment Claims**

Defendants seek dismissal of Plaintiff's Complaint on grounds that he has failed to plead facts that would support a claim of deliberate indifference sufficient to violate the Eighth Amendment. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss [Doc. No. 16] at 5-13.) Second,

1    Defendants Tilton, Almager and Cook assert that they cannot be subject to § 1983 liability based
2    on their role in the prison administrative grievance system. (*Id.* at 15-16.)

3                    **1.      Standard of Review**

4           The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton
5    infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428
6    U.S. 153, 173 (1976)); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  The Eighth
7    Amendment's cruel and unusual punishments clause is violated when prison officials are
8    deliberately indifferent to a prisoner's serious medical needs.  *Estelle*, 429 U.S. at 105.
9    "Medical" needs include a prisoner's  "physical, dental, and mental health." *Hoptowit v. Ray*,
10   682 F.2d 1237, 1253 (9th Cir. 1982); *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989)
11   ("[T]he Eighth Amendment requires that prisoners be provided with a system of ready access
12   to adequate dental care.").

13          To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must
14   allege facts which demonstrate that he was confined under conditions posing a risk of
15   "objectively, sufficiently serious" harm and that prison officials had a "sufficiently culpable state
16   of mind" in denying him proper medical care.[4] *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir.
17   1995) (internal quotations omitted).  Thus, there is both an objective and a subjective component
18   to an actionable Eighth Amendment violation.  *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.
19   2002); *Toguchi*, 391 F.3d at 1057 ("To establish an Eighth Amendment violation, a prisoner
20   'must satisfy both the objective and subjective components of a two-part test.'") (quoting *Hallett*
21   *v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

22           Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy
23   the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*,  217 F.3d 726, 731
24   (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges
25   facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that]

26   ────────────────
27          [4]  A plaintiff need not prove complete failure to treat; deliberate indifference may be shown where
     access to medical staff is meaningless because the staff does not render competent care.  *Ortiz v. City*
     *of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir.
28   1982).)

condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (quotations omitted); *Lopez*, 203 F.3d at 1131-32; *see also Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain).

However, the subjective component requires the prisoner to also allege facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057 (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

Thus, because the indifference to medical needs also must be substantial; inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Hallett*, 296 F.3d at 744; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). In other words, an "official's failure to alleviate a significant risk that he should have perceived but did not ... cannot ... be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838; *Toguchi*, 391 F.3d at 1057 ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.") (brackets, footnote and citations omitted)). The Eighth Amendment proscribes only "the 'unnecessary and wanton infliction of pain,' [] includ[ing] those sanctions that are 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (quoting *Gregg*, 428 U.S. at 173, 183). "This is not an easy test for [a] plaintiff[] to satisfy." *Hallett*, 296 F.3d at 745.

////

////

Moreover, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). And, while deliberate indifference can be manifested if a doctor or prison guard intentionally denies or delays access to medical care or otherwise interferes with medical treatment already prescribed, *see Estelle*, 429 U.S. at 104-05, the delay must also lead to further injury or be somehow harmful. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *Wood*, 900 F.2d at 1339-40; *see also Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Hunt*, 865 F.2d at 200.

### 2.        Application to Plaintiff's Allegations

Here, the Court finds that Plaintiff has adequately pleaded facts sufficient to support the "objective" component of an Eighth Amendment inadequate medical treatment claim. *See Clement*, 298 F.3d at 904. In addition, Defendants have stated that they are not moving to dismiss Plaintiff's Complaint on the grounds that his dental condition was not "serious." (*See* Defs.' Mem. in Supp. of Mot. to Dismiss at 12, fn. 9.) Accordingly, based on the allegations in Plaintiff's Complaint, the Court finds that  these allegations are sufficient to show a medical need which was objectively "serious." *See Estelle*, 429 U.S. at 105; *Doty*, 37 F.3d 546; *Hunt*, 865 F.2d at 200 (finding that prisoner's bleeding gums, breaking teeth and his inability to eat properly were sufficiently serious to satisfy the Eighth Amendment).

However, in order for deliberate indifference to be established, a defendant must purposefully ignore or fail to respond to a prisoner's prior or possible medical need. *See McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *Toguchi*, 391 F.3d at 1057. This "subjective approach" focuses only "on what a defendant's mental attitude actually was." *Farmer*, 511 U.S. at 839.

////

1    Here, the Court finds that Plaintiff has sufficiently alleged am Eighth Amendment

2 deliberate indifference to a serious medical claim as to each Defendant.  Defendants claim that

3 Plaintiff's allegations are that "his dental care was unconstitutional because his condition was

4 categorized as routine, and he was placed on a waiting list." (Defs.' Mem. in Supp. of Mot. to

5 Dismiss at 11.)  Yet, Defendants fail to cite to the record in their motion.  In fact, Defendants

6 claim in their motion that this action should be dismissed because "Defendant relied on a

7 medical diagnosis that Plaintiff's condition was routine." (*Id.* at 13.)  Many of their arguments

8 appear to fall outside the facts actually alleged in Plaintiff's Complaint.  In Plaintiff's Complaint,

9 he alleges that Defendant Cummings, after examining him, found that his dental work was

10 "defective and needed to be replaced." (Compl. at 14.)  Nowhere in Plaintiff's Complaint does

11 the Court find an allegation by Plaintiff in which he claims that Cummings himself found his

12 dental needs to be "routine."  Instead, Plaintiff filed appeals to the administrative grievances

13 prepared by other Defendants in which Defendant Cook, not Defendant Cummings, categorized

14 Plaintiff's dental needs as routine. (*Id.* at 14-15.)

15    Moreover, Defendants concede in reply that Plaintiff should be granted leave to amend

16 to allege facts relating to the categorization of his dental condition. (*See* Defs.' Reply in Supp.

17 of Mot. to Dismiss at 1-2.)  Despite their own arguments falling outside the four corners of the

18 Complaint, Defendants object to documents attached to Plaintiff's opposition in which he claims

19 demonstrate that Defendant Cummings did not classify his condition as routine. (*Id.* at 2.)

20 Clearly both parties are engaging in arguments that relate to the evidence that either supports or

21 opposes Plaintiff's claims.  Such arguments are better served in a Motion for Summary Judgment

22 and not appropriate in a motion brought pursuant to FED.R.CIV.P. 12(b)(6).

23    The issue before the Court is whether Plaintiff has alleged facts sufficient to state a

24 deliberate indifference claim to Plaintiff's serious dental needs.  Plaintiff alleges that prison

25 officials delayed in providing him with a dental examine which was mandatory within fourteen

26 days of his arrival at CEN. (Compl. at 3.)  Plaintiff received a dental examination by Defendant

27 Cummings five months after his arrival at CEN because he filed an administrative grievance.

28 (*Id.* at 4.)  At first, Defendant Cook denied Plaintiff's grievance because he did not present any

dental concerns during his health examination on January 26, 2006 despite Plaintiff's understanding that he was to receive a dental examination within fourteen days of January 26th. (*Id.*)  Defendant Cook told Plaintiff he would be seen by a dentist in the "chronological date order in which the request [for dental services] is received."  (*Id.*)

Defendant Cummings diagnosed Plaintiff with a toothache and indicated that he had a defective "SCC" which needed replacement.  (*Id.*)  However, Plaintiff was not treated on July 13, 2006, instead Defendant Cummings informed Plaintiff that he would have the tooth "capped" the next time Defendant Cummings came to "Facility D."  (*Id.* at 6.)  Plaintiff filed another appeal to obtain dental services based on Defendant Cummings's diagnosis, which was denied by Defendant Cook, who admonished him for abusing the prison's administrative grievance procedure.  (*Id.*)  Plaintiff alleges he submitted appeals to both Almager and Tilton which were also rejected.  (*Id.* at 7.)   Plaintiff's tooth was eventually extracted.  (*Id.* at 11.)

As to Defendant Cummings, Plaintiff claims "Defendant Cummings [refused] to repair Plaintiff's tooth after determining on July 13, 2006 [that] the cap was defective."  (*Id.*) He further alleges Defendant Cook "refused to order Defendant Cummings to repair Plaintiff's tooth" despite the fact that she knew the cap needed repair.  (*Id.* at 14.)  In addition, Plaintiff alleges that he informed Defendant Almager that he was "being deprived of dental care after it had been determined the tooth needed repair."  (*Id.* at 15.) And finally, Plaintiff "informed Defendant Tilton that the cap on his tooth was broken and exposed to food and air" and "caused him pain every time he ate" but Tilton "refused to intervene."  (*Id*. at 8-10.)[5]

As previously stated above, the Court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff.  *N.L. Industries, Inc.*, 792 F.2d at 898.  Here, based on the allegations set forth in the Complaint, the Court finds that Plaintiff has

---

[5]  In their motion, Defendants Almager and Tilton also maintain that it is not reasonable to infer from the record that Plaintiff brought his dental condition to their attention, an important requisite to find deliberate indifference.  (*See* Defs.' Mem. in Supp. of Mot. to Dismiss at 9.) However, as previously stated, Defendants are asking the Court to make assumptions based on evidence outside the Complaint which is not the standard for a motion to dismiss.  In support of their argument, they ask that the Court look to unpublished Ninth Circuit opinions.  These opinions are not helpful or even applicable to the case at hand because they are opinions based on motions for summary judgment, not motions to dismiss.

1  alleged facts sufficient to demonstrate that Defendants were aware of, but disregarded, his

2  serious dental needs.

3      Finally, Defendants make the broad argument that "a prison official is not subject to

4  Section 1983 liability based only on his or her role in the prison grievance system." (Defs.'

5  Mem. in Support of Mot. to Dismiss at 15.)  This is true to the extent that a prisoner is seeking

6  to claim that his Fourteenth Amendment due process rights were violated by the denial of his

7  administrative grievances.  The Court agrees, as evidenced by *published* Ninth Circuit Court of

8  Appeal opinions, a prisoner has no protected property interest in an inmate grievance procedure

9  arising directing from the Due Process Clause of the Fourteenth Amendment.  *See Mann v.*

10 *Adams*, 855 F.3d 639, 640 (9th Cir. 1988).[6]  Plaintiff is not bringing a Fourteenth Amendment

11 Due Process claim in his Complaint.  This argument and these cases are irrelevant to the matter

12 currently before the Court.

13     For all these reasons, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's

14 Complaint pursuant to FED.R.CIV.P. 12(b)(6).

15 **IV.    Conclusion and Order**

16     For all the foregoing reasons, **IT IS HEREBY ORDERED** that:

17     Defendants' Motion to Dismiss Plaintiff's Complaint is **DENIED**  pursuant to

18 FED.R.CIV.P. 12(b)(6).  Defendants shall file and serve their Answer to Plaintiff's Complaint

19 within ten (10) days of the date this Order is "Filed" pursuant to FED.R.CIV.P. 12(a)(4)(A).

20

21 **DATED:  July 14, 2008**

22                                              *Irma E. Gonzalez*

23                                              **IRMA E. GONZALEZ, Chief Judge**
                                                **United States District Court**

24

25

26     [6]  Again Defendants request that the Court look to unpublished decisions in support of their
   argument.  (*See* Defs.' Notice of Lodgment in Supp. of Mot. to Dismiss at 1-2.)  These cases do not
27 supply the factual basis for the Court of Appeal's opinion and they appear to all be cases in which the
   Plaintiff is seeking to bring a Fourteenth Amendment claim based on the prison's grievance procedure.
28 Finally, each case supplied by Defendants deals with opinions based on motions for summary judgment.